MICHAEL FARESE, PLAINTIFF, PLAINTIFF IN ERROR, v. NORTH JERSEY STREET RAILWAY COMPANY, DE- FENDANT, DEFENDANT IN ERROR.

Submitted July 5, 1909—Decided November 15, 1909.

Plaintiff was struck by a trolley car and injured while crossing the track on foot. He claimed that he looked for a car and could not see it on account of the foggy condition of the air. It was dark, but plaintiff was under an electric light. The lights on the car were dim. Plaintiff admitted seeing lights in a store several doors away in the opposite direction, and other witnesses some distance away testified to seeing the plaintiff under the light and the car as it struck him. *Held*, that the testimony did not con- clusively demonstrate that the car was visible to plaintiff before he stepped on the track.

On error to the Supreme Court, whose opinion is reported in 47 *Vroom* 457.

For the plaintiff in error, *Alexander Simpson.*

For the defendant in error, *Edwards & Smith.*

The opinion of the court was delivered by

PARKER, J. The plaintiff below, at the time in question a boy of about fifteen years of age, was injured by being struck by one of the defendant's trolley cars as he was crossing the track on foot in Harrison avenue, between Dey and First streets, Harrison. He brought an action for damages against the defendant in the Hudson County Circuit Court, claiming that his injury was due to negligence of the motorman in charge of the car. Motions to nonsuit and for direction of verdict were made by defendant on the grounds that no negli- gence of the motorman had been made out, and also that plaintiff was guilty of contributory negligence, but were denied and the jury found for the plaintiff. The case being taken to the Supreme Court on writ of error, that court found that plaintiff's claim that he looked for the car and

failed to see it could not be true, because the evidence in his behalf, in the opinion of the court, demonstrated that if he had looked he must have seen it at a sufficient distance to avoid the accident, and held that a nonsuit should have been granted on the ground of contributory negligence. Plaintiff now brings the case by further writ of error into this court.

The question of the motorman's negligence was not discussed in the opinion of the court below, but was clearly one for the jury, as it was in evidence that though plaintiff was on a crosswalk at a point about the middle of a long block where the defendant's cars habitually stopped for passengers and which was designated as a stopping place by the sign "trolley station" suspended over the tracks, and though it was dark and misty, the motorman rang no bell, and that after striking the plaintiff the car carried him clinging to the fender a distance of fifty or seventy-five feet or more before stopping, thus raising an inference of excessive speed at the time of collision.

On the question of plaintiff's contributory negligence the case turned in the Supreme Court, as well as in the trial court, on the question whether the conditions were such that plaintiff could have seen the car had he looked. The trial judge charged:

"If it was so cloudy that night that if he looked he could not see, and if it is true that he heard nothing, then he was not guilty of negligence. But if it was so clear that he could have seen this car coming and did not see it, then you have the right to infer he did not look, and then he was guilty of contributory negligence and he cannot recover."

And again:

"If the plaintiff crossed right in front of the car and did so without looking to see that he could get across, he was guilty of negligence. Although on a crosswalk, a person may have a right of way as against a trolley car or other vehicle, yet he has no right to close his eyes to the danger and make no effort to get out of the way of danger."

This was as favorable a charge to the defendant on this point as it was entitled to ask, and from the finding of the

jury for plaintiff it is evident that that body must have con-
cluded from the evidence that plaintiff looked for the car
before starting to cross the track, but was prevented by
atmospheric conditions from seeing it in due time. This was
his claim, and if it was a question for the jury whether he
was able to see the car, and whether he looked and failed to
see it, the judgment should stand.

The evidence showed that the accident occurred on a dark
and misty night, the air being surcharged with moisture and
this condition obstructing the view. There was a long block
running on the south side of Harrison avenue easterly from
Dey street, the corner of which was No. 29, to First street.

From between Nos. 37 and 39 the crosswalk in question
crossed the street, and almost directly over it was an electric
light. Three or four doors to the east was a candy store with
lights in the windows. At No. 58, across Harrison avenue
and some little distance to the east, was a saloon kept by a
witness named McGuigan, also with lights in its windows.
The testimony was that the headlight and other lights of the
car were dim. Plaintiff testified that he came out of No. 37
and wished to cross the street; that he stood on the curb and
looked up and down, but could not see far because it was so
"cloudy;" that he could see only about as far as to the wall
of the court room (thirty or forty feet) ; that he could not
see the lights in the saloon, but could see those in the candy
store in the opposite direction from the car; that he saw no
car and heard none, and stepped down from the curb to cross
the track, a very few feet away, and was struck by an east-
bound car coming from Newark just as he had passed the
first rail and stepped on the second.

The witness Barry testified that he was standing at the
southeast corner of Harrison avenue and First street and
could see plaintiff, because there was an electric light right
on him, but did not see the car till it hit him; that he could
not see the lights in the car but "could see the front of the
car on account of the electric light showing down on it."
Witness Lynch was standing across the street in front of No.
58, and saw plaintiff come across the street and "go up when

the fender hit him." McGuigan, at the same place as Lynch, saw "an object from the curb across the street, · * * * and saw the object hit with a trolley car." When plaintiff started to step on the track witness saw the object come into view which he afterwards knew was the car; that this was then about fifteen or twenty feet away from plaintiff; that he saw the lights in the car but not until after the accident, and that they were dim, as was also the headlight.

The reasoning of the Supreme Court appears to be that because plaintiff admitted seeing the lights in the candy store, and because the other witness testified to seeing him under the electric light, and to seeing the car when (or just before in the case of McGuigan) it struck him, his claim that he looked . for the car and did not see it is conclusively shown to be untrue, or, to put it in another way, that he could not have looked effectually. This rule is adopted by courts in cases where the conditions are admittedly such as to permit of a perfect and unobstructed view, as in the line of railroad crossing cases based on *Pennsylvania Railroad Co.* v. *Righter,* 13 *Vroom* 180, but in the present case the conditions were not of this character. Whatever the witnesses Lynch, Barry and McGuigan could see from their points of observation, assuming their testimony to be accurate, it does not conclusively follow that plaintiff, standing in another place, could see any given distance out into the darkness in continuation of their line of vision. It is possible that the fog was thicker to the west of plaintiff, but a fair explanation of the apparent discrepancy in the testimony is that plaintiff was standing almost directly under a brilliant light and the witnesses were in semi-darkness. It is common knowledge that he could not, under such conditions, see well out into the darkness, while he might well see the lights of the candy store, and the witnesses could readily see him, illuminated as he was, and perhaps also the car as it came close upon him. If, as was testified or inferable from the testimony, the car was moving at a high rate of speed, it may under such circumstances not have been sufficiently near for the light from the electric light to penetrate the fog and be reflected back to make it visible to plaintiff

until he was in the act of crossing the track and it was too late for him to escape.

We think, therefore, that the question whether the car was visible to plaintiff in time for him to avoid it was for the jury, and that in consequence his story that he did look and did not see was also for the jury to pass upon. The judgment of the Supreme Court will accordingly be reversed and that of the Circuit Court affirmed.

*For affirmance*—REED, TRENCHARD, VOORHEES, JJ. 3.

*For reversal*—THE CHANCELLOR, GARRISON, SWAYZE, PARKER, BOGERT, VREDENBURGH, VROOM, DILL, CONGDON, JJ. 9.